IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| José Amaury Sánchez-Jiménez,<br><br>Plaintiff,<br>v.<br>United States of America,<br>Mariano Garay,<br>Defendants. | Civil No. 22-01483 (GMM) |

<u>**OPINION AND ORDER**</u>

Before the Court is the United States of America ("United States") and Mariano Garay-Ortiz's ("Garay") (collectively, "Defendants") *Motion to Dismiss*. (Docket No. 23). The Court **GRANTS** Defendants' motion.

## I.   RELEVANT BACKGROUND

On September 23, 2020, Plaintiff, José Amaury Sánchez-Jiménez ("Sánchez" or "Plaintiff") returned to Puerto Rico from a family visit to the Dominican Republic. (Docket No. 1. at 4). While in the Dominican Republic, a friend of Sánchez's, Luis Ramón Rosa, asked Sánchez to transport a passport and visa to Puerto Rico upon his return to the Commonwealth. (Id.). The documents Sánchez was asked to and did bring into Puerto Rico were false. (Id.).

Upon entering Puerto Rico, Sánchez was stopped by U.S. Customs and Border Protection ("CBP"). Upon a search of his luggage, the false documents were found within the lining of his suitcase. (Docket No. 23 at 3). Sánchez was then interrogated by Garay, an

Civil No. 22-01483(GMM)
Page -2-

officer with the CBP. (Docket No. 1 at 4). Garay wrote an affidavit recording the statements that Sánchez relayed under oath during the interrogation. (Id.). Sánchez states that he told Garay that he did not know if the documents he had been given to bring into Puerto Rico were genuine or not. (Id. at 4-5). Specifically, when questioned if he knew if the passport was legitimate, Plaintiff told Garay that he "didn't know when [he] received [the passport], but after [he] looked at [it], [he] wasn't sure if it was real." (Docket No. 23-1 at 7). When Garay questioned Sánchez about why he had stowed the passport in the lining of his bag, Sánchez responded: "because I wasn't sure it was real." (Id.).

Sánchez subsequently became the Defendant in Criminal Case No. 20-340 (PAD) over the alleged possession of counterfeit immigration documents. During these proceedings, on October 14, 2020, Garay testified in front of the Grand Jury. He stated that "[Plaintiff] hid the documents because he knew that the documents were fraudulent." (Docket No. 23-3 at 4). That same day Sánchez was indicted for his transport of a fraudulent passport under 18 U.S.C. § 1546(a). See Criminal Case No. 20-340 (PAD), Docket No. 16.

On October 14 and 28, 2021, respectively, two Superseding Grand Jury Indictments against Plaintiff were issued based upon the testimonies of CBP Officer Jerry Cabán and CBP Agent Juan

Civil No. 22-01483(GMM)
Page -3-

Batista. *See* Criminal Case No. 20-340 (PAD), Docket Nos. 73 and 85. On November 18, 2021, following a four-day jury trial, Sánchez was acquitted of the charges against him. *See* Criminal Case No. 20-340 (PAD), Docket No. 123.

On October 11, 2022, Sánchez filed his Complaint. He contends that Defendants gave false testimony against him before the Grand Jury in the criminal case. (Docket No. 1). Specifically, Plaintiff claims that: (1) the United States engaged in malicious prosecution in violation of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-2680, and Puerto Rico Law, 31 L.P.R.A. Sec. 5141; 31 L.P.R.A. § 10801; and (2) Garay violated Plaintiff's Fourth Amendment Rights pursuant to the United States Constitution and the Supreme Court decision in <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971). (<u>Id.</u> at 7-10). Considering these allegations, Plaintiff requested that the Court award him punitive and compensatory damages of $3 million for the pain and suffering he endured because of the criminal charges and litigation imposed upon him. (<u>Id.</u> at 11-12).

On May 15, 2023, Defendants filed a *Motion to Dismiss*. (Docket No. 23). They argue that Plaintiff's FTCA claim fails for: (1) lack of jurisdiction due to Plaintiff's failure to exhaust the administrative remedies available under 28 U.S.C. 2401(b); and (2) even if the Court finds that the Plaintiff adequately exercised

Civil No. 22-01483(GMM)
Page -4-

his administrative remedies without avail, he failed to substantiate a malicious persecution FTCA cause of action which requires proof that the officer acted both maliciously and without probable cause. (Id. at 10-12).

In their *Motion to Dismiss*, Defendants also maintain that Garay's testimony does not create a Bivens claim because: (1) Garay has absolute immunity from actions based on Grand Jury testimony; (2) Garay has qualified immunity from liability because he did not violate a clearly established constitutional right under a reasonable officer acting under the totality of the circumstances standard; and (3) Garay's conclusion and testimony that Sánchez knew the passport was illegitimate was a reasonable inference based on the undisputed facts regarding Sánchez's acquisition of the document. (Docket No. 23 at 5-9). Defendants argue, in the alternative, that the Court should follow Supreme Court precedent and be hesitant to extend the Bivens remedy to apply to disputes where other remedies, such as those under the FTCA, are available. (Id. at 12). Finally, Defendants note that Plaintiff was subject to two superseding indictments after the indictment issued based upon Garay's testimony, one on October 14, 2021, and one on October 28, 2021. (Id. at 4).

On May 17, 2023, Plaintiff filed his *Opposition to Motion to Dismiss*. (Docket No. 26). Therein, Plaintiff maintains that there

Civil No. 22-01483(GMM)
Page -5-

was sufficient factual evidence to support his claims. Moreover, Sánchez rejects Defendants' immunity arguments contending, for example, that making a false statement, even when the officer believed that it was supported by the totality of the circumstances, was improper, constituted perjury, and violated Sánchez's Fourth Amendment rights. (Id. at 7-8).

Finally, on June 6, 2023, Defendants entered their *Reply to Opposition to Motion to Dismiss*. (Docket No. 29). Defendants again stressed that Garay acted neither with malice nor without probable cause in giving his testimony to the Grand Jury. (Id. at 2-4). They posit that the two superseding indictments were the operative charging instrument against the Plaintiff and thus, Garay's testimony had no actual effect on the charges for which the Plaintiff was indicted. (Id. at 4-5). Defendants also note that Plaintiff failed to exhaust his administrative remedies under the FTCA given that the United States Attorneys are not authorized to receive Standard Form 95s ("SF95s"),[1] and the CBP never received the SF95 claim. (Id. at 7-8).

On June 12, 2023, Plaintiff filed his *Surreply to Reply to Opposition to Motion to Dismiss -DE 29*. (Docket No. 34).

---

[1] SF95 stands for Standard Form 95, which is the form used to present a claim to a federal agency under the FTCA. *See* 28 C.F.R. § 14.2(a).

Civil No. 22-01483(GMM)
Page -6-


## II.   LEGAL STANDARD

A.   Lack of Subject-Matter Jurisdiction

"[F]ederal courts are not at liberty to overlook limitations on their subject matter jurisdiction." Abbott Chem., Inc. v. Molinos de Puerto Rico, Inc., 62 F. Supp. 2d 441, 445 (D.P.R. 1999) (quoting A.M. Francis v. Goodman, 81 F.3d 5, 8 (1st Cir.1996)). "It is black-letter law that a federal court has an obligation to inquire sua sponte into its own subject matter jurisdiction." McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004) (citing In re Recticel Foam Corp., 859 F.2d 1000, 1002 (1st Cir.1988)). See also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Plainly, if this Court determines, as a threshold matter, that it lacks subject matter jurisdiction, it is required to dismiss the case and may not make any determinations on the merits of Plaintiff's claims. See Abbott Chem., Inc., 62 F. Supp at 445.

The parties or the Court may raise the issue of subject matter jurisdiction at any time during a proceeding, and if, at any time, it becomes evident that the Court lacks subject matter jurisdiction, then the Court must dismiss the action. See e.g. Santiago Rosario v. Estado Libre Asociado de Puerto Rico, 52 F. Supp. 2d 301, 303 (D.P.R. 1999); McNutt v. General Motors Accept.

_Corp._, 298 U.S. 178, 184(1936); <u>Chaparro-Febus v. Local 1575</u>, 983 F.2d 325, 329 n. 4 (1st Cir.1992). Rule 12(h)(3) standards mirror those challenging subject matter jurisdiction under a 12(b)(1) motion. _See_ <u>Smith v. Roger Williams Univ. L. Sch.</u>, No. 1:21-CV-133-PJB-AKJ, 2023 WL 3303866, at *1 (D.R.I. May 8, 2023); <u>Berkshire Fashions, Inc. v. M.V. Hakusan II</u>, 954 F.2d 874, 880 n.3 (3d Cir. 1992) (stating that 12(h)(3) and 12(b)(1) motions only differ in that the "former may be asserted at any time" and that, when they both challenge subject-matter jurisdiction, they are "analytically identical").

Under Fed. R. Civ. P. 12(b)(1), a federal court must presume that federal jurisdiction is lacking until established otherwise. _See_ <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377(1994); <u>Viqueira v. First Bank</u>, 140 F.3d 12, 16 (1st Cir. 1998). The party asserting federal jurisdiction bears the burden of demonstrating that such jurisdiction exists. _See e.g._ <u>Aversa v. United States</u>, 99 F.3d 1200, 1209 (1st Cir. 1996) (_citing_ <u>Murphy v. United States</u>, 45 F.3d 520, 522 (1st Cir. 1995)); <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992); <u>Thomson v Gaskill</u>, 315 U.S. 442, 446 (1942); <u>Reyes-Colón v. United States</u>, 974 F.3d 56, 60 (1st Cir. 2020); <u>Gordo-González v. United States</u>, 873 F.3d 32, 35 (1st Cir. 2017).

Civil No. 22-01483(GMM)
Page -8-


The distinction between factual analyses under Rule 12(b)(1) and Rule 12(b)(6) is rooted in the unique nature of the jurisdictional question. A district court has broader power to decide its own right to hear the case than it has when the merits of a case are being considered. "Jurisdictional issues are for the court-, not a jury-, to decide, whether they hinge on legal or factual determinations." Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981).

There are two broad types of jurisdictional challenges: facial and factual. *See* Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth., 4 F.4th 63, 69 (1st Cir. 2021). In facial challenges, sometimes called sufficiency challenges, the movant accepts the nonmovant's jurisdictionally significant facts but challenges their sufficiency to confer subject-matter jurisdiction. *See* Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001). "The analysis is essentially the same as a Rule 12(b)(6) analysis: we accept the well-pleaded facts alleged in the complaint as true and ask whether the plaintiff has stated a plausible claim that the court has subject matter jurisdiction." Cebollero-Bertran, 4 F.4th at 69. In factual challenges, however, the court "engage[s] in judicial factfinding to resolve the merits of the jurisdictional claim." Id. In conducting this analysis, the Court has "broad authority to order discovery, consider extrinsic evidence, and

Civil No. 22-01483(GMM)
Page -9-

hold evidentiary hearings." <u>Valentín</u>, 254 F.3d at 363. The reason for this is simple: "[W]hen a factbound jurisdictional question looms, a court must be allowed considerable leeway in weighing the proof, drawing reasonable inferences, and satisfying itself that subject-matter jurisdiction has attached." <u>Id.</u> at 364. As part of this analysis, the Court may review any evidence, including submitted affidavits and depositions, to resolve factual disputes bearing upon the existence of jurisdiction. *See* <u>Land v. Dollar</u>, 330 U.S. 731, 734-35 (1947); *see also* <u>Aversa v. United States</u>, 99 F.3d at 1210 (citation omitted).

If the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff is in question, then the Court gives no presumptive weight to plaintiff's jurisdictional averments, and it must "address the merits of the jurisdictional claim by resolving the factual disputes between the parties." <u>Valentín</u>, 254 F.3d at 363. Again, once challenged, the party asserting federal jurisdiction bears the burden of proving that such jurisdiction exists. *See* <u>Johansen v. United States</u>, 506 F.3d 65, 68 (1st Cir. 2007).

B.   <u>Failure to State a Claim</u>

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss an action when plaintiffs fail to state a claim upon which relief can be granted.

Fed. R. Civ. P. 12(b)(6). To survive a 12(b)(6) motion, a complaint must contain sufficient facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir. 2011)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). The complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Maddox, 732 F.3d at 80 (quoting Fed. R. Civ. P. 8(a)(2)), and should "contain 'enough facts to state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44-45 (1st Cir. 2012) (citing Iqbal, 556 U.S. at 678).

"The plausibility standard invites a two-step pavane."
Maddox, 732 F.3d at 80 (citation omitted). First, courts "must
separate the complaint's factual allegations (which must be
accepted as true) from its conclusory legal allegations (which
need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R.,
676 F.3d 220, 224 (1st Cir. 2012)). Second, "the court must
determine whether the remaining factual content allows a
'reasonable inference that the defendant is liable for the
misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224);
see also Rodríguez-Wilson v. Banco Santander de Puerto Rico, 501
F.Supp.3d 53, 56 (D.P.R. 2020).

"Plausible, of course, means something more than merely
possible." Zell v. Ricci, 957 F.3d 1, 7 (1st Cir. 2020) (citing
Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st
Cir. 2012)). Hence, dismissal for failure to state a claim will be
appropriate if the pleadings fail to set forth "factual
allegations, either direct or inferential, respecting each
material element necessary to sustain recovery under some
actionable legal theory." Centro Medico del Turabo, Inc. v.
Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005) (quoting Berner
v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997)). "A determination
of plausibility is 'a context-specific task that requires the
reviewing court to draw on its judicial experience and common

Civil No. 22-01483(GMM)
Page -12-

sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679, 129 S.Ct. 1937). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)).

### III. APPLICABLE LAW AND ANALYSIS

A.   FTCA Claim

   1.   Exhaustion of Administrative Remedies

As a threshold matter, before reaching the merits of the Motion to dismiss for failure to state a claim, the Court first considers the question of subject-matter jurisdiction. The United States argues that Plaintiff's failure to exhaust administrative remedies warrants the dismissal of his claims against the Government. Hence, the Court must review whether Plaintiff exhausted available administrative remedies prior to filing his FTCA claim in this Court.

The FTCA creates a limited congressional waiver of sovereign immunity for tortious acts and/or omissions committed by employees of the U.S. acting within the scope of their employment. See 28 U.S.C. §§ 1346(b)(1), 2645; see also Domínguez v. United States, 799 F.3d 151, 153 (1st Cir. 2015); Diaz-Nieves v. United States, 858 F.3d 678, 683 (1st Cir. 2017). Thus, in certain circumstances

the FTCA allows a plaintiff to hold the United States civilly
liable in a manner akin to that applicable to a private individual
in similar circumstances. *See* Solís-Alarcón v. United States, 662
F.3d 577, 582 (1st Cir. 2011). The FTCA is weighed in favor of the
government. *See* Holloway v. United States, 845 F.3d 487, 489 (1st
Cir. 2017). The Act expressly allows actions against the federal
government for claims of "'assault, battery, false imprisonment,
false arrest, abuse of process, or malicious prosecution' arising
out of 'acts or omissions of investigative or law enforcement
officers of the United States Government.'" Solis-Alarcon, 662
F.3d at 583 (*quoting* 28 U.S.C. § 2680(h)).

Since the FTCA is a waiver of the United States' sovereign
immunity, the failure to meet all waiver requirements renders the
court without subject-matter jurisdiction. *See* Dynamic Image
Techs., Inc. v. United States, 221 F.3d 34, 40-41 (1st Cir. 2000).
Under the FTCA, a putative plaintiff must administratively exhaust
claims before bringing them in court. *See* 28 U.S.C. § 2675(a)
(barring plaintiff from bringing an FTCA claim "unless the claimant
shall have first presented the claim to the appropriate Federal
agency and his [or her] claim shall have been finally denied by
the agency in writing and sent by certified or registered mail.");
McNeil v. United States, 508 U.S. 106, 113 (1993); Cotto v. United
States, 993 F.2d 274, 280 (1st Cir. 1993) ("Exhaustion of

plaintiffs' administrative remedies is a jurisdictional prerequisite to the prosecution of ... FTCA claims.").

Before a tort action against the United States may be filed in federal court under the FTCA, the tort claim must first be "presented" to the appropriate federal agency "within two years after such claim accrues." *See* 28 U.S.C. § 2401(b). A regulation, 28 C.F.R. § 14.2(a), promulgated by the United States Department of Justice, fleshes out parts of this requirement. *See* Santiago-Ramirez v. Sec'y of Dep't of Def., 984 F.2d 16, 19 (1st Cir. 1993). It provides that a tort claim is "presented" within the meaning of § 2401(b) when the appropriate federal agency "receives" written notice of that claim. 28 C.F.R. § 14.2(a).[2] This requirement is "non-waivable [and] jurisdictional." Acosta v. U.S. Marshals Serv., 445 F.3d 509, 513 (1st Cir. 2006) (*quoting* Santiago-Ramirez, 984 F.2d at 18, 19-20). Here, the Government presents a jurisdictional challenge and argues that Plaintiff failed to exhaust his administrative remedies since: (1) the U.S. Attorney

---

[2] Section 14.2(a) provides in full:
    For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

was an improper recipient of his SF95; and (2) CBP never received Plaintiff's claim. (Docket No. 23 at 10). Therefore, the factual dispute is whether the Government received Plaintiff's claim.

In support of their dismissal argument, Defendants submit a chain of e-mails with the Office of the Assistant Chief of Counsel of the CBP. (Docket No. 29-3). In these e-mails, Attorney Diana Espinosa states -after running a search of the "CBP Service Intake Box"- that the CBP "did not receive any correspondence from the plaintiff or his counsel from Dec. 2021 to Feb. 2022." (Id. at 1).

Sánchez avers that he complied with the presentment requirement by sending standard claim forms -SF95s- to both, the U.S. Attorney General for the District of Puerto Rico and CBP. (Docket No. 1 at 2). Plaintiff alleges in his Complaint that he received no response to his administrative claims. (Id.). He also provides a United States Postal Service's ("USPS") tracking number in his Complaint and supplemented his claim with a copy of his shipping receipts in his Opposition to Motion to Dismiss. (Docket Nos. 1 at 2 and 26-1).

Plaintiff insists that the CBP "was properly notified of the administrative claim via a SF95" sent to the proper address. Yet, in support and establish this Court's jurisdiction, he only provides a copy of the tracking number issued by the USPS tracking system. Notably, Plaintiff does not include a copy of the SF95 he

alleges that he submitted, nor any other evidence that controverts Defendants' assertion that CBP lacks any record of Sánchez, or someone acting on his behalf, having filed the SF95 or any other written notification of his tort claim. (Docket No. 26-1).

The Supreme Court has not examined the FTCA's presentment requirement, nor has the First Circuit squarely addressed whether the mailbox rule applies to claims under the FTCA such that mailing notice of a claim satisfies the statute's presentment requirement. *See* Velez-Diaz v. United States, 507 F.3d 717, 719 (1st Cir. 2007). (Addressing the mailbox rule). Nonetheless, most courts that have addressed the question have held that the common-law mailbox rule is inapplicable to FTCA claims. *See* Cooke v. United States, 918 F.3d 77, 82 (2d Cir. 2019) (*citing* Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999)) ("[T]he mailbox rule is inapplicable to claims brought under the FTCA, and ...therefore the mere mailing of a notice of claim does not satisfy the FTCA's presentment requirement. The statute and corresponding regulation make clear that actual receipt is required, and applying the mailbox rule to claims under the FTCA would be inconsistent with the principle that waivers of sovereign immunity must be strictly construed and limited in scope in favor of the sovereign."); *see also* Flores v. United States, 719 F. App'x 312, 317 n. 1 (5th Cir. 2018) ("The common law mailbox rule is inapplicable to the FTCA".);

Lightfoot v. United States, 564 F.3d 625, 628 (3d Cir. 2009) (holding that mailing an FTCA claim does not satisfy the presentment requirement when the agency did not receive the claim); Garland-Sash v. Lewis, 348 F. App'x 639, 643 (2d Cir. 2009) (*citing* Vacek v. U.S. Postal Serv., 447 F.3d 1248, 1252 (9th Cir. 2006) ("[V]irtually every circuit to have ruled on the issue has held that the mailbox rule does not apply to [FTCA] claims, regardless of whether it might apply to other federal common law claims."); Moya v. United States, 35 F.3d 501, 504 (10th Cir. 1994); Bellecourt v. United States, 994 F.2d 427, 430 (8th Cir. 1993); Drazan v. United States, 762 F.2d 56, 58 (7th Cir. 1985).

"An essential element of [an FTCA] claim is 'notification of the incident,' via 'an executed' SF95 or 'other written' document, 'accompanied by' a demand 'for money damages in a sum certain.'" Holloway, 845 F.3d at 489 (*citing* 28 C.F.R. § 14.2(a)). The mere existence of a USPS tracking number in the record is insufficient for the Court to reasonably infer that Sánchez sought to exhaust —much less exhaust— his administrative remedy obligations. Under these circumstances, the Court heeds the Supreme Court's instruction and strictly construes the FTCA filing requirements in favor of the government. *See* Ardestani v. INS, 502 U.S. 129, 129 (1991).

Considering the foregoing, the Court finds that Plaintiff failed to meet his burden of proving that he exhausted his administrative remedies and that this Court has subject-matter jurisdiction. Therefore, the Court finds that Plaintiff is barred from bringing this FTCA suit in federal court. The Court lacks jurisdiction and must dismiss Plaintiff's FTCA Complaint. *See* Rivera De Jesus v. Soc. Sec. Admin., 114 F.Supp.3d 1, 3 (D.P.R. 2015) (*quoting* McNeil, 508 U.S. at 113 ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.").Because the Court finds that it lacks subject-matter jurisdiction over Plaintiff's FTCA claim, it need not address the malicious prosecution cause of action brought pursuant to that statute.

B.   Plaintiff's Fourth Amendment and Bivens Claim

"In Bivens, the [Supreme] Court held that a Fourth Amendment violation by federal agents, acting under color of governmental authority, gave rise to a cause of action for money damages against those agents in their individual capacities." González v. Vélez, 864 F.3d 45, 52 (1st Cir. 2017) (*citing* Bivens, 403 U.S. at 389). To substantiate a Bivens claim, a Plaintiff must prove that: (1) he or she was deprived of a Constitutional or federal legal right; and (2) the deprivation was caused by a person acting under color of the law. *See* Bivens, 403 U.S. at 392.

The Supreme Court then recognized that Bivens created an implied right of action in three limited circumstances: (1) "a claim against FBI agents for handcuffing a man in his own home without a warrant;" (2) "a claim against a Congressman for firing his female secretary;" and (3) "a claim against prison officials for failure to treat an inmate's asthma." Ziglar v. Abbasi, 582 U.S. 120, 140 (2017) (*citing* Bivens, 403 U.S. 388; Davis v. Passman, 442 U.S. 228 (1979); Chappell v. Wallace, 462 U.S. 296 (1983); Carlson v. Green, 446 U.S. 14 (1980)). Later, the High Court "specified that when a Bivens-type claim is lodged, the appropriate analysis must begin by determining whether the plaintiff is seeking to extend the Bivens doctrine to a new context," González, 864 F.3d at 52 (*citing* Ziglar, 582 U.S. at 138), or to a "new category of defendants." Hernandez v. Mesa, 140 S.Ct. 735, 743 (2020) (*quoting* Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 68 (2001)). "While the boundaries of Bivens-type liability are hazy, the Supreme Court. . .[has] made plain its reluctance to extend the Bivens doctrine" beyond the three causes of action previously identified. González, 864 F.3d at 52-53 (emphasis added); *see also* Ziglar, 582 U.S. at 120.

In more recent cases, including Egbert v. Boule, 142 S.Ct. 1793 (2022), the Supreme Court has cautioned that "recognizing a cause of action under Bivens is 'a disfavored judicial

activity[,]'" and "'[e]ven a single sound reason to defer to
Congress' is enough to require a court to refrain from creating
such a remedy." Egbert, 142 S. Ct. at 1803 (*first quoting* Ziglar,
582 U.S. at 135; and *then quoting* Nestlé USA, Inc. v. Doe, 141 S.
Ct. 1931, 1937 (2021)).

    1.   Whether Bivens Should Be Expanded

    Plaintiff grounds his Bivens cause of action in an allegation
that Garay, a CBP officer, violated his Fourth Amendment rights by
procuring his indictment based on supposedly intentional false
testimony in which Garay stated that Plaintiff knowingly possessed
and transported false documents. In evaluating Plaintiff's claim,
the Court applies the two-step analytical process as articulated
in Ziglar and re-stated in Egbert. *See* Ziglar, 582 U.S. at 138;
Egbert, 142 S. Ct. at 1803.

    First, the Court must determine "whether the case presents 'a
new Bivens context'—*i.e.*, is it 'meaningful[ly]' different from
the three cases in which the Court has implied a damages action."
Egbert, 142 S. Ct. at 1803 (alteration in original) (*quoting*
Ziglar, 582 U.S. at 139). "A case might differ in a meaningful way
because of the rank of the officers involved; the constitutional
right at issue; the generality or specificity of the official
action; the extent of judicial guidance as to how an officer should
respond to the problem or emergency to be confronted; the statutory

or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider." Ziglar, 582 U.S. at 139-40.

"Second, if a claim arises in a new context, a Bivens remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" Egbert, 142 S. Ct. at 1803 (quoting Ziglar, 582 U.S. at 136). "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new Bivens cause of action.'" Id. at 1804 (quoting Ziglar, 582 U.S. at 137).

In sum, "the modern Bivens analysis involves a factual comparison to the facts of Bivens itself (or Davis, or Carlson, depending on the case), with an emphasis on avoiding any extension of Bivens to meaningfully new factual circumstances." Quinones-Pimentel v. Cannon, 85 F.4th 63, 70 (1st Cir. 2023).

a. New Context and New Category of Defendants

The Court thus begins by reviewing whether Plaintiff's Fourth Amendment claims present a "new context" under Supreme Court precedent. Here, Bivens is the most analogous of the three seminal

Supreme Court cases, since it involved a Fourth Amendment claim against federal agents. "[H]owever[,] this similarity, by itself, is insufficient to qualify this case as presenting the same context as in Bivens." Quinones-Pimentel v. Cannon, 85 F.4th at 70.

A factual analysis reveals several differences. The facts in Bivens involved a Fourth Amendment claim against federal line-level investigative officers who allegedly: (1) entered and searched a plaintiff's apartment without probable cause or a warrant; (2) arrested the plaintiff for alleged drug violations; (3) handcuffed the plaintiff in front of his family; (4) threatened to arrest his family; and (5) later interrogated, booked, and visually strip searched him. Bivens, 403 U.S. at 389. The facts of this case starkly differ than those of Bivens. The present matter involves Fourth Amendment claims against a CBP officer who allegedly gave false testimony against the Plaintiff before the Grand Jury in a criminal case. Comparing the cases' sets of facts, the Court finds that Plaintiff was neither handcuffed nor arrested nor subject to a warrantless search of his home or person.

Furthermore, neither the Supreme Court nor the First Circuit have expressly addressed whether the presentation or use of false or misleading evidence and/or testimony to the Grand Jury to secure an indictment presents a 'new context' for a Bivens claim. Yet, since Ziglar, several sister courts have declined to recognize a

Bivens action in the context of malicious prosecution, including claims and allegations similar to those presented here. *See, e.g.*, Boudette v. Sanders, No. 18-cv-02420, 2019 WL 3935168, at *5 (D. Colo. Aug. 19, 2019) (involving a malicious prosecution claim); Karkalas v. Marks, No. 19-cv-00948, 2019 WL 3492232, at *6-14 (E.D. Pa. July 31, 2019) (involving a claim for "unlawful prosecution and pretrial detention following allegedly false and misleading statements to a grand jury. . ."), aff'd, 845 F.App'x 114 (3d Cir. 2021). These courts have held that similar claims were "meaningfully different" from the claim in Bivens, irrespective of the defendants at issue. *See, e.g.*, Quinones-Pimentel v. Cannon, No. 20-cv-01443, 2022 WL 826344, at *7, *20 (D.P.R. Mar. 17, 2022) aff'd, 85 F.4th 63 (1st Cir. 2023) (declining to recognize a Fourth Amendment Bivens claim related to FBI agents allegedly "'formulating false and perjured evidence and statements to be used in support of the affidavit' for a search warrant, conspiring to file an affidavit under oath containing false information, and intentionally deceiving the Magistrate Judge to get her to issue the search warrant.").

In addition, as stated above, the Supreme Court has also refused to extend Bivens to a "new category of defendants." Ziglar, 582 U.S. at 135. Most recently, in Hernandez v. Mesa, the Supreme Court declined to create a damages remedy against a Border Patrol

agent, like Garay. In Egbert, the High Court likewise declined to extend Bivens liability to a claim against a Border Patrol officer.

The Court thus finds that this case presents a new Bivens context, as well as a new set of defendants. As such, the Court next considers whether there are "'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" Egbert, 142 S.Ct. at 1803 (quoting Ziblar, 582 U.S. at 136).

     c. Special Factors Counseling Against Extension of a Bivens Remedy

As discussed, the existence of "alternative remedial structures[,]. . . like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new Bivens cause of action.'" Egbert, 142 S.Ct. at 1804 (quoting Ziglar, 582 U.S. at 137). Here, as Defendants argue, there is an established remedial structure provided by the FTCA for monetary damages against the United States and its officers for losses caused by malicious prosecution. In addition, the secrecy of Grand Jury proceedings constitutes a "special factor" counseling against a Bivens action. See Farah v. Weyker, 926 F.3d 492, 499 (8th Cir. 2019). In that case, the Eighth Circuit explained that the plaintiff's claims alleging false information presented to the Grand Jury would require the court to determine "whether there was probable cause

to charge the plaintiffs with a crime that would have justified their detention pending trial." Farah, 926 F. 3d at 500.  The court added that to determine whether the Grand Jury had probable cause to indict the plaintiff, the court would necessarily have to: (1) look at the Grand Jury record to see if probable cause existed; and (2) interview Grand Jury members to determine whether the allegedly false testimony influenced their return of an indictment. Id.

Another special factor cautioning the extension of Bivens to the present context is the potential effect on national security that may arise from grafting an implied damages action against CBP officers onto the remedial structure already provided by Congress, the Executive, and the Judiciary via separate avenues. See Hernandez, 140 S.Ct. at 746.

Expanding the Bivens remedy is now disfavored. Thus, under the rigorous two-step inquiry mandated by Supreme Court jurisprudence, it is difficult to infer a damages action for claims that differ in even modest ways from those advanced in Bivens and its progeny. Here, a principled application of this analysis leads to the conclusion that Sánchez may not pursue his constitutional claim against Garay in an implied action for damages. The Court, therefore, **GRANTS** Defendants' *Motion to Dismiss*.

Civil No. 22-01483(GMM)
Page -26-

The Court notes that Defendant's *Motion to Dismiss* raises claims of absolute and qualified immunity to Plaintiff's causes of action. However, the Court finds it unnecessary to consider the alleged defenses given its conclusions on other grounds that Plaintiff's FTCA and <u>Bivens</u> claims do not survive Defendant's *Motion to Dismiss*. <u>Quinones-Pimentel v. Cannon</u>, 85 F.4th at 75, n.12 ("as we conclude that Appellants' Bivens claims cannot move forward, we do not address Appellants' arguments as to absolute and qualified immunity.").

### IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' *Motion to Dismiss*. The Complaint is dismissed without prejudice and Judgment of Dismissal shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, March 6, 2024.


<u>s/Gina R. Méndez-Miró</u>
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE